IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL : 
AUTOMATIC SPRINKLER INDUSTRY :
WELFARE FUND, et al. :
 :
    v. : Civil Action No. DKC 12-1421
 :
WESTLAND FIRE PROTECION, INC., :
et al. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is a motion for judgment filed by Plaintiffs, the trustees of various funds associated with the National Sprinkler Industry (collectively. "the Funds"). (ECF No. 17). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

The following facts are alleged in the complaint. The Funds are multiemployer benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). Defendant Westland Fire Protection, Inc., d/b/a Advanced Fire Protection, Inc., a Michigan contractor or subcontractor in the sprinkler industry, is an employer in an industry affecting commerce, as defined in Sections 501(1), (3), 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141(1), (3), and 152(2); Sections 3(5),

(9), (11), (12), and (14) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12), and (14); and Section 3 of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001a.[1]

Pursuant to collective bargaining agreements ("CBAs") with Sprinkler Fitters Union Nos. 669 and 704, Defendants agreed to pay certain sums of money for each hour worked by covered employees. Defendants are also bound by the Restated Agreements and Declarations of Trust establishing the Funds ("Trust Agreements"). The CBAs and Trust Agreements authorize Plaintiffs to audit Defendants' payroll and wage records to verify the accuracy of monthly contributions. Beginning in December 2011, on behalf of the Funds, an auditor made numerous attempts to conduct an audit of Defendants' records for the period of January 1, 2009, through the date of the audit. Defendants have consistently refused access to the necessary records.

Plaintiffs commenced this action on May 10, 2012, alleging that Defendants breached the CBAs when, from December 2011 through February 2012, they "refused access to the company's records that were requested by the . . . Funds' auditor for the period of January 1, 2009[,] through the date of the audit." (ECF No. 1 ¶ 11). The complaint further recites that, pursuant

---

[1] The complaint additionally names Westland Fire Protection, Inc., and Advanced Fire Protection, Inc., but the allegations appear to relate to a single business entity.

2

to the Trust Agreements, "an Employer that fails to pay contributions in a timely fashion shall be liable for liquidated damages, interest on the amounts owing and for all expenses incurred in enforcing payment of the contributions due, including but not limited to reasonable attorneys' fees, accountant's fees, and court costs." (*Id*. at ¶ 16). Plaintiffs sought an order requiring Defendants to permit an audit and judgment for the amount of any unpaid contributions, plus liquidated damages, interest, attorneys' and audit fees, and costs.

Service of process was effected on May 29, 2012. When Defendants failed to respond within the requisite time period, Plaintiffs concomitantly filed a motion for entry of default (ECF No. 8), and a motion for default judgment (ECF No. 9). Defendants failed to respond, and the clerk entered default on August 3. (ECF No. 10). On December 4, 2012, the court granted in part and denied in part Plaintiffs' motion for default judgment, holding that the well-pleaded allegations established a violation of ERISA. (ECF No. 13). Defendants were ordered to submit to an audit within thirty (30) days and to produce any records requested by an auditor representing Plaintiffs. (ECF No. 14). Plaintiffs' request for attorneys' fees and costs was denied as premature because the Trust Agreements state that these fees and costs can be recovered only upon showing that the

Defendants failed to pay contributions in a timely fashion. Because no such showing had yet been made, Plaintiffs could not recover at that time.

On May 22, 2013, following a request for a status report, Plaintiffs represented that serving the December 4, 2012 Order upon Defendants had proven difficult and was only recently successful. Defendants responded to the Order by agreeing to get the information requested, but stated that "it will take me longer than 30 days, [as] my accountant has all this information and he will not release any documents until I get him paid in full, which I'm currently trying to do." (ECF No. 17-5). Plaintiffs told the court that if the records were not produced by the end of June 2013, they will continue with the lawsuit by filing a motion for final judgment. (ECF No. 16).

Defendants failed to provide the documents or set a date for the audit, hence the instant motion. Plaintiffs move for entry of final judgment and an order that Defendants permit a complete audit of its wage and payroll records for the period January 1, 2009 to the date of the audit. (ECF No. 17). Plaintiffs also move for judgment against the Defendants for $730.00 in costs and $1,118.75 in attorneys' fees. On August 20, 2013, the court entered an order directing Defendants to show cause by September 11, 2013, as to why they should not be held in contempt for their failure to comply with the December

4

4, 2012 order. (ECF No. 18). Defendants did not respond and Plaintiffs did not seek a contempt hearing.

Final judgment will be entered against the Defendants and they will be ordered to submit to an audit. In terms of attorneys' fees, "[i]n an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). Plaintiffs submit that in pursuing these claims, they have incurred attorneys' fees in the amount of $1,118.75 and costs in the amount of $730.00. (ECF No. 17-1, at 2).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). In deciding what constitutes a "reasonable" number of hours and a "reasonable" rate, numerous factors may prove pertinent, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the

5

instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243–44 (4th Cir. 2009) (*quoting Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[2] "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244

---

[2] The United States Supreme Court recently appeared to question the approach adopted by the United States Court of Appeals for the Fourth Circuit in *Kimbrell's* — originally set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) - describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too great of an emphasis on subjective considerations. *See Perdue v. Kenny A.,* 559 U.S. 542, 551-52 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." (internal citations omitted)). Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC,* No. CCB-10-3469, 2012 WL 142978, at **5-6 (D.Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

(*quoting Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," including, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 244, 245 (internal quotation marks omitted).

Plaintiffs' attorney was Mr. Charles W. Gilligan of the law firm O'Donoghue & O'Donoghue, LLP. He represents that he and his paralegal spent a total of 9.0 hours on this case, with Mr. Gilligan contributing 1.25 hours, and his paralegal contributing 7.75 hours. (ECF No. 17-8). Mr. Gilligan submits a declaration that his negotiated fee with Plaintiffs was $275.00/hour for his time and $100.00/hour for his paralegal's time. Mr. Gilligan represents that these rates are below the usual and customary fee charged for this type of work and on the low end of the guidelines set by the Local Rules. (ECF NO. 17-7 ¶ 4); Local Rules, Appendix B.3 (rates for lawyers admitted to the bar for fifteen (15) years are more: $275-400; paralegals: $95-115). Plaintiffs' counsel's rates are on the low end of the Local Guidelines' suggested range and are found to be reasonable.

Turning next to the hours worked, Plaintiffs' counsel submit an itemized time record that for each entry lists the date of work, time spent, a brief description of the work, and whether the work was done by an attorney or a paralegal. (ECF No. 17-8). Plaintiffs' counsel represent that they worked a total of 9.0 hours on preparing the summons and complaint, and moving for default and final judgment. Mr. Gilligan spent 1.25 hours and his paralegal spent 7.75 hours on this case. After reviewing the time sheet, the hours worked are found to be reasonable. This case was not complex and counsel gave it an appropriate amount of effort. Additionally, the vast majority of the effort was done by the paralegal, thereby further keeping the costs in check. For these reasons, the Plaintiff will be awarded the full amount of requested attorneys' fees: $1,118.75.

Plaintiffs also request $730.00 in costs, specifically the filing fee and process services. Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988). Here, the expenses requested by Plaintiff's attorneys appear to be reasonable and typical and they will be awarded in full.

In sum, the motion for entry of judgment in favor of Plaintiffs will be granted. Judgment will be entered in favor

of Plaintiffs and against Defendants for the amount of $1,848.75 and Defendants will be ordered to submit to an audit. A separate order will follow.

                                        /s/
                           DEBORAH K. CHASANOW
                           United States District Judge